NOT DESIGNATED FOR PUBLICATION

No. 114,039

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HILTON PLASTER COMPANY, INC.,
*Appellee*,

v.

ROBERT L. KNOBLAUCH A/K/A BOBBY KNOBLAUCH,
and
WHEATLAND DRYWALL, INC.,
*Appellants*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DOUGLAS R. ROTH, judge. Opinion filed September 30, 2016. Affirmed.

*James T. McIntyre*, of Law Offices of James T. McIntyre, of Wichita, for appellant.

*Keith D. Richey*, of Law Office of Keith D. Richey, of Wichita, for appellee.


Before PIERRON, P.J., GREEN and BUSER, JJ.


*Per Curiam*:  Wheatland Drywall (Wheatland) was hired as a subcontractor to do construction work. Wheatland contacted Hilton Plaster (Hilton) to do stonework on the same project. When Hilton was not paid, it sued Wheatland and its owner, Bobby Knoblauch. Wheatland and Knoblauch alleged that the general contractor had hired Hilton. Knoblauch eventually learned that the general contractor had paid Wheatland for work that Hilton had completed, but Wheatland and Knoblauch maintained that they did not hire Hilton as a subcontractor. The trial court ruled that Wheatland had hired Hilton to do stonework. On appeal, Wheatland and Knoblauch challenge the trial court's ruling,

1

which served as the basis for the award of a statutory interest rate and attorney fees. Determining that substantial support existed for the trial court's factual finding, we affirm.

In 2012, Wheatland entered into a subcontractor agreement with Flynn Construction Management General Contracting, Inc. (Flynn). Flynn had been hired as a general contractor to build a Planet Fitness in Wichita, Kansas. Wheatland was hired as a subcontractor to perform framing and drywall. The owner of Wheatland, Bobby Knoblauch, later e-mailed Flynn's president with estimates for the additional services of Exterior Insulation and Finish System (EIFS), additional framing, and stonework, quoting a price of $12,800 for the stonework. The contract was revised to include EIFS and framing for the price of $35,100 that Knoblauch had quoted. In fact, the contract was revised a total of seven times. Contract Revision 5 lists stonework at a price of $12,350. Unlike the first four revisions, Contract Revisions 5 through 7 were not signed by Knoblauch.

But Hilton—not Wheatland—performed the stonework on the Planet Fitness project. It sent Wheatland an invoice for the work with the price listed as $12,330. When Wheatland failed to pay, Hilton sued, naming both Wheatland and Knoblauch as defendants. Hilton's petition alleged that Wheatland and Knoblauch had hired it as a subcontractor. The petition also alleged that according to the Kansas Fairness in Private Construction Contract Act, K.S.A. 16-1801 *et seq.,* Hilton was entitled to interest on the unpaid amount at a rate of 18% per annum and also costs and attorney fees. Wheatland and Knoblauch, in their answer, denied that they had hired Hilton as a subcontractor. They also claimed that in any communication about the project with Hilton, Knoblauch was acting as a disclosed agent of Flynn and that Hilton was Flynn's subcontractor.

After Wheatland and Knoblauch failed to respond to discovery requests, Hilton moved to compel discovery and for sanctions. The trial court granted the motion,

2

ordering Wheatland and Knoblauch to respond to Hilton's discovery requests and pay $500 in sanctions. They did respond to the discovery requests, but they evidently failed to turn over several of the documents that Hilton had requested. Included in those documents was a series of e-mails from Flynn to Knoblauch that Hilton's attorney had previously received from Flynn. In the e-mails, Flynn directed Knoblauch to pay Hilton and threatened to press charges for falsifying an affidavit. Knoblauch apparently never responded to any of the e-mails. Wheatland and Knoblauch also never turned over its bank records or Contract Revisions 5 through 7. Hilton moved a second time to compel discovery and for sanctions.

The trial court held a hearing on the motion and recessed until a later date to allow the parties time to obtain and review Wheatland's bank records, which the trial court had ordered the bank to produce. At the next hearing, Hilton stated that the bank records and the documents from Flynn were sufficient to prove that Wheatland had failed to produce documents that Hilton had requested and that it had received payment from Flynn for work that Hilton had completed. The parties agreed that the case should be set for an evidentiary hearing. The trial court ordered both Knoblauch and David Hilton (David), the owner of Hilton Plaster, to personally appear.

One day before the evidentiary hearing, Hilton's attorney received a letter from Wheatland and Knoblauch's attorney, stating:

> "Mr. Knoblauch has finally acknowledged to me after extensive review of the records you provided, that he did in fact receive $12,350 of money that should have gone to Hilton Plaster. I am therefore willing to agree to Entry of Judgement in the amount of $12,350, interest at a rate to be determined by the court, from June 2013 until paid, and for the court to determine the amount of attorney fees due."

The trial court read the letter into the record at the hearing. Wheatland and Knoblauch objected to the application of the statutory interest rate and the awarding of costs and

3

attorney fees, arguing that the Kansas Fairness in Private Construction Contract Act did not apply because Hilton was not their subcontractor. The trial court then heard testimony from both Knoblauch and David.

Knoblauch testified that he had only recently realized that Wheatland had been overpaid and that he had not seen Contract Revision 5, which listed the stonework, until recently at his attorney's office. He also testified that there were no e-mails exchanged between David and him; that Wheatland and Hilton did not have a contract; and that he did not interpret Hilton as being a part of the contract with Flynn. On cross-examination, Knoblauch stated that Flynn's president directed him to seek bids for the stonework and that Hilton's bid was one of three. Further, he did not have any of the e-mails from Flynn because he had deleted them and he had not kept records from any of his jobs. Moreover, contrary to those e-mails, Knoblauch claimed that he had responded to Flynn's president about the issue. Although he was not aware of anyone else having contact with Hilton, Knoblauch stated that he had nothing to do with Hilton's work and had not even inspected the completed project. Finally, when David called asking for payment, Knoblauch told him to contact Flynn because he had nothing to do with Hilton.

According to David, Knoblauch first asked him over the phone to give a quote on stonework. David maintained that he had no contact with Flynn, or anyone else, and that all his contact was with Knoblauch. David also testified that Knoblauch visited the jobsite, speaking with Hilton employees, and that when the stone ran out, he contacted Knoblauch to obtain more. He had not dealt with nor did he have conversations with anyone else. According to David's understanding, Knoblauch had hired Hilton. David also stated that when he called Knoblauch about getting paid, Knoblauch initially said there was a dispute over the square footage but then stopped taking his calls.

After considering the credibility of the witnesses, the trial court found that Flynn had hired Wheatland as a subcontractor and that Wheatland had invited others, including

4

Hilton, to bid on the stonework. The court also specifically found that Wheatland was not acting as Flynn's agent but was a subcontractor that hired another subcontractor, Hilton, and was paid for work that Hilton had performed. The trial court also noted that Knoblauch's failure to keep good records and his failure to realize that Flynn had overpaid Wheatland was not a defense to Wheatland's failure to pay Hilton for stonework it had completed. Finally, the trial court determined that the Kansas Fairness in Private Construction Contract Act statutory interest rate applied and awarded attorney fees to Hilton.

*Was the Trial Court's Finding That Wheatland and Knoblauch Hired Hilton as a Subcontractor Supported by Substantial Competent Evidence?*

Wheatland and Knoblauch maintain that because substantial competent evidence did not support the trial court's finding that Wheatland hired Hilton as a subcontractor, the trial court erred in awarding Hilton attorney fees and applying the statutory interest rate. In their brief, they seem to suggest that the trial court erred in interpreting or applying the Kansas Fairness in Private Construction Contract Act. There is no dispute that both Wheatland and Hilton were subcontractors. The remaining issue is whether they were both subcontractors for Flynn or whether Wheatland had hired Hilton as a subcontractor.

When reviewing a trial court's factual findings, an appellate court generally applies a substantial competent evidence standard. *Hamel v. Hamel*, 296 Kan. 1060, 1078, 299 P.3d 278 (2013). Substantial evidence is evidence that "a reasonable person might accept as sufficient to support a conclusion." *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 916, 157 P.3d 1109 (2007). An appellate court ignores conflicting evidence and other inferences that could be drawn from the evidence which do not tend to support the district court's findings. *Unruh v. Purina Mills*, 289 Kan. 1185, 1196, 221 P.3d 1130 (2009). To

5

the extent that statutory interpretation is necessary, an appellate court's review is unlimited. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

K.S.A. 2015 Supp. 16-1803(g) states: "If the contractor fails to pay a subcontractor within seven business days, the contractor shall pay interest to the subcontractor beginning on the eighth business day after receipt of payment by the contractor, computed at the rate of 18% per annum on the undisputed amount." That section also applies to subcontractors and their subcontractors. K.S.A. 2015 Supp. 16-1803(h). A subcontractor is defined as "any person performing construction covered by a contract between an owner and a contractor but not having a contract with the owner." K.S.A. 2015 Supp. 16-1802(h). Contractors are persons "performing construction and having a contract with an owner of the real property or with a trustee, agent or spouse of an owner." K.S.A. 2015 Supp. 16-1802(d). Also, the prevailing party in an action under K.S.A. 2015 Supp. 16-1803 is entitled to costs and reasonable attorney fees. K.S.A. 16-1806.

David testified that Knoblauch initially contacted him over the phone and asked him for a quote. After some time, Knoblauch contacted David again and asked if he was still interested in doing the job. Hilton then began doing the stonework. David also testified that he had no contact with Flynn, all contact was through Knoblauch, and that he did not have any other contact about the job with anyone else. According to David's testimony, Knoblauch also visited the jobsite and spoke with Hilton employees, and when the workers ran out of stone, David called Knoblauch, who then ordered more. Finally, David testified that he had not dealt with anyone except for Knoblauch. He did not know of Flynn's involvement; from his understanding, Knoblauch had hired Hilton to do the stonework; and he did not have any conversations about the project with anyone else.

Wheatland and Knoblauch argue that the contract revision showing the stonework was not signed by Knoblauch and that no documentary evidence showing that Wheatland

had hired Hilton as a subcontractor was presented. But as previously mentioned, when reviewing a trial court's factual findings, this court ignores any conflicting evidence. *Unruh*, 289 Kan. at 1196. Further, although no documentary evidence was presented, David's testimony, as shown, supported the trial court's finding that Wheatland had hired Hilton as a subcontractor. In making that finding, the trial court, as it specifically noted, determined the credibility of Knoblauch and David. Moreover, appellate courts do not redetermine the credibility of witnesses. See *Garvey Elevators, Inc. v. Kansas Human Rights Comm'n*, 265 Kan. 484, 496-97, 961 P.2d 696 (1998).

Because a reasonable person would accept David's testimony as sufficient to support the trial court's conclusion that Wheatland had hired Hilton as a subcontractor, the trial court's factual findings were supported by substantial competent evidence. Thus, the trial court properly awarded Hilton attorney fees and applied the statutory interest rate.

Affirmed.